UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JACK HENRY & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-292-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BSC, INC., et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

There are two relevant contracts among the parties in this case: the EFT Agreement and the Core Director Agreement. The plaintiff, Jack Henry & Associates, Inc. ("JHA"), a software developer and bank service provider, filed a complaint alleging that the defendants, nine Kentucky banks under the same ownership ("defendant banks"), breached the EFT Agreement. R. 32. The defendants filed various counterclaims related to the Core Director Agreement. R. 35.

JHA has two motions pending in this case: (1) a motion to strike the affidavit of Mark Terry, R. 115, and (2) a motion for summary judgment on JHA's breach of contract claim pursuant to the EFT Agreement, R. 58. The Court denies both motions for the reasons set forth below.

## PENDING MOTIONS

**1. JHA's Motion to Strike, R. 115**

At the conclusion of a March 29, 2010 hearing, the Court ordered supplemental briefing

on the issue of whether the EFT Agreement[1] and Core Director Agreement[2] should be interpreted to form one contract under Missouri law.[3] R. 111 at 2; R. 112 at 86-88 (hearing transcript). On April 5, 2010, JHA and the defendants filed briefs on the contract interpretation issue. R. 113; R. 114. Attached to the defendants' brief was a sworn affidavit by Mark Terry ("Terry"), president of the defendant banks. R. 113, Ex. 4. The affidavit was dated April 5, 2010. *Id*. JHA seeks to strike the affidavit on the grounds that it is: outside the scope of the Court's Order for supplemental briefing and in violation of the Federal Rules of Civil Procedure. JHA is incorrect on both accounts.

**JHA's Argument Based on the Court's Order for Supplemental Briefing**

The Court's March 30, 2010, Minute Entry Order included the following language relevant to JHA's motion:

> Both the plaintiff and the defendants shall include facts in the briefs: (1) in favor of and (2) opposed to construing the contracts together. Each fact shall be in a separate numbered paragraph and shall include a citation to the record. Facts without citations will not be considered. If the citation does not support the fact alleged, the fact will not be considered.

R. 111 at 2. JHA argues that the Order "did not call for new evidence" and that the record "was

---

[1] The EFT Agreement concerns "electronic switch processing services." This service connected the defendant banks with foreign ATMs outside of the banks' own network of ATMs. *See* R. 114, Ex. E ("EFT Agreement").

[2] The Core Director Agreement related to software that runs the core functions of a bank—account info, loan applications, ledgers, etc. *See* R. 114, Ex. A ("Core Director Agreement").

[3] The agreements both contain a Missouri choice of law provision. The Court ruled that Missouri law applies to the contracts in this case. R. 80 at 3.

2

closed upon submission of the motions for summary judgment to the Court." R. 115 at 2. JHA's arguments are inaccurate. The Order did not limit either party to relying on only those facts in the record as of the date of the Order. The Order did not address whether the Court would consider "new" evidence. Nor did the Order state that the record was "closed" as JHA now claims. Further, the Court reviewed the portions of the hearing transcript where the parties and the Court discussed the issue of supplemental briefing. R. 112 at 86-88. Neither party requested clarification on whether the parties could submit "new" evidence as part of the supplemental briefs. Indeed, the Court directed the parties at the hearing to "file *all* the facts that support [each party's] position." *Id.* at 86 (emphasis added). Thus, JHA's motion is denied because Terry's affidavit does not violate the Court's Order for supplemental briefing.

### JHA's Argument Based on the Federal Rules of Civil Procedure

JHA also argues that the Court should strike Terry's affidavit pursuant to Fed. R. Civ. P. 6(c)(2), 56(c), and 56(e). *See* R. 115. Each of these claims fail.

Fed. R. Civ. P. 6(c)(2) and 56(c) are inapplicable at this stage of the case. Rule 6(c)(2) provides: "Any affidavit supporting a motion must be served with the motion. Except as Rule 59(c) provides otherwise, any opposing affidavit must be served at least 7 days before the hearing, unless the court permits service at another time." Fed. R. Civ. P. 6(c)(2). JHA claims that Terry's affidavit is untimely because the defendants filed it in the record seven days after a hearing on the motions for summary judgment. R. 115 at 1. This claim fails because the Court ordered the supplemental briefing at the hearing. R. 112 at 86. Rule 56(c) governs the time for filing and responding to a motion for summary judgment. This rule is also inapplicable because

3

the Court's March 30, 2010, Order required additional briefing after the parties completed their initial briefing on the motions for summary judgment. R. 111.

JHA's argument that Terry's affidavit violates Fed. R. Civ. P. 56(e) is also inaccurate. "All affidavits, regardless of the author, must be made on personal knowledge and set forth facts that would be admissible in evidence." *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 667 (6th Cir. 2005) (citing Fed. R. Civ. P. 56(e)). Terry's affidavit focuses primarily on why the defendants entered into the contracts with JHA. *See* R. 113, Ex. 4. As president of the defendant banks, Terry had "personal knowledge" of why the defendants decided to enter into the contracts with JHA.

Based on its review of Terry's deposition, JHA claims that portions of Terry's prior deposition conflict with his affidavit. R. 115 at 2-3. JHA argues that Terry's involvement "was limited to a meeting in which he, Mike Dinsmore, and Larry Pizzitola discussed a pricing spreadsheet and a diagram in the context of discussing potential connection issues and a conference call on the day the EFT Agreement was signed." *Id*. On this basis, JHA argues Terry's deposition shows that Terry does not have personal knowledge of the contents of the affidavit. There is, however, no conflict between Terry's deposition and his affidavit. Terry's knowledge is not limited to the meeting and conference call that JHA cites in its motion to strike. It is unreasonable to think Terry, as bank president, was not involved in a significant, multi-million dollar decision to contract with JHA for software and services that were essential to the banks' operations. In their response to the motion to strike, the defendants cite other portions of Terry's deposition where his testimony supports his affidavit. *See* R. 117 at 3. Indeed, Terry's

4

testimony in his deposition also relates to the reasons the defendants contracted with JHA—including the ability to obtain "real-time" services. *See id*. Accordingly, Terry is able to testify at trial about the contents of his affidavit, including the reasons that the defendants contracted with JHA. The motion to strike Terry's affidavit is denied.

**2. JHA's Motion for Summary Judgment on its Breach of Contract Claim, R. 58**

JHA's motion for summary judgment on its breach of contract claim based on the EFT Agreement must be denied because the issue of whether the parties intended the EFT Agreement and Core Director Agreement to be construed together as one contract is a question of fact for the jury under Missouri law. Since it is a question of fact, the only issue before the Court is whether there is a material dispute about how the contracts are to be interpreted—as one or independently. *See Mo. Sav. Ass'n v. Home Sav. of Am.,* 862 F.2d 1323, 1326 (8th Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

JHA's motion for summary judgment on its breach of contract claim pertains only to the EFT Agreement. R. 58 at 1-2. This was not the only contract between the parties. JHA and the defendants also entered into the Core Director Agreement (and other contracts). The Core Director Agreement is the basis for the defendants' counterclaims. R. 35. The Court previously denied JHA's motion for summary judgment on the defendants' breach of contract counterclaim and other counterclaims. R. 80.

At the end of the March 29, 2010 hearing, the Court directed the parties to: (1) brief the applicable Missouri law on interpreting multiple contracts together as one contract and (2) cite facts in the record regarding the parties' intent with respect to construing the EFT and Core

Director Agreements together. R. 111 at 2. Both parties filed briefs in accordance with the Court's Order. R. 113 (defendants' brief); R. 114 (JHA's brief). As an initial matter, the parties agree on the applicable Missouri law. The disagreement solely relates to whether there is a material issue regarding the parties' intent to form one contract or two.

At first glance, JHA's argument that the parties did not intend the two agreements to be construed together appears to carry the day. JHA correctly states that "the parties' intent is determined by first examining the relevant documents, which are interpreted by the Court as a matter of law." R. 114 at 6 (citing *Robbins v. McDonnell Douglas Corp.*, 27 S.W.3d 491, 496 (Mo. Ct. App. 2000)). The *Robbins* court provides the following summary of law on the first step of the analysis here:

> Interpretation of a contract is a question of law. The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. If a contract is not ambiguous, i.e., when the contract terms are unequivocal, plain, and clear, the intent of the parties is determined from the contract alone and the court is bound to enforce the contract as written.

*Robbins*, 27 S.W.3d at 496 (citations omitted). Both the EFT Agreement and the Core Director Agreement contained similar (but not identical) integration clauses stating that each agreement "supersedes" all prior agreements and constitutes "the entire agreement between the parties." *See* Core Director Agreement ¶ 19; *see also* EFT Agreement ¶ 25. Thus, based on the existence of the integration clauses, it appears that the parties unambiguously intended the contracts to be separate instruments. But under Missouri law, integration clauses are not given their full force and effect when there are multiple agreements. Interpreting Missouri law, the Eighth Circuit has found that an integration clause does not unambiguously show that the parties intended separate

6

documents to be construed separately. *See N. Am. Sav. Bank v. Resolution Trust Corp.*, 65 F.3d 111, 115 (8th Cir. 1995) ("the court may find that the parties intended for several documents to serve as a single contract, even if one of those documents contains an integration clause." (citing *Mo. Sav. Ass'n,* 862 F.2d at 1326)); *see also Mo. Sav. Ass'n,* 862 F.2d at 1326 (an integration clause is "not conclusive proof" of the parties' intent). Moreover, neither the EFT Agreement nor the Core Director Agreement specifically refers to the other. Had they referenced each other, it clearly would have made the analysis easier. The contracts could, for example, incorporate each other and thus support the defendants' position. Likewise, the contracts could say that each contract is completely independent—i.e. that the two contracts are mutually exclusive. Neither contract contains such a clause. And, as noted above, the integration clauses are simply not enough under Missouri law to make a conclusive determination–at this stage–as to the parties' intent. Thus, the analysis cannot begin and end solely within the four corners of the documents.

When looking outside the four corners of a contract, "Missouri law . . . holds that the question of contractual intent is a question of fact." *Mo. Sav. Ass'n*, 862 F.2d at 1325-26 (citing *Singer Co. v. E.I. du Pont de Nemours & Co.*, 579 F.2d 433, 439 (8th Cir. 1978); *Computer Network, Ltd. v. Purcell Tire & Rubber Co.*, 747 S.W.2d 669, 674 (Mo. Ct. App. 1988)). If there is "sufficient evidence" that a "reasonable fact-finder" could conclude that the parties intended multiple contracts to form one contract, then a jury—not the Court—determines the parties' intent. *Id*. Intent is determined "from the entire instrument or instruments, subsidiary agreements, and relevant external circumstances." *Id.* at 1326 (citing *Mo. Farmers Ass'n, Inc. v. Barry*, 710 S.W.2d 923, 926 (Mo. Ct. App. 1986)). Also, the parol evidence rule does not bar

7

extrinsic evidence "because whether the parties intended to integrate their entire agreement into particular documents is the threshold issue." *Id*.

This analysis requires looking at the facts of the case to determine whether a "reasonable fact-finder" could conclude that the parties intended to construe the contracts together. JHA, as the party moving for summary judgment, has the burden of showing there is no genuine issue of fact. *See id.* JHA argues that there is no reasonable basis to conclude the two contracts should be construed as one, and thus, the Court can—and should—determine as a matter of law that the agreements are separate. *See* R. 114 at 15 ("there is no evidence upon which a reasonable jury could rely to conclude that the parties intended the Core Director Agreement, its Addendums, and the EFT Agreement to be construed as a single contract"). The defendants, however, argue that they "have shown genuine issues of material fact that the parties intended the contracts to be part of one transaction and viewed as one contract." R. 113 at 15. A look at the arrows in each party's quiver reveals that genuine issues of material fact exist to send this question to the jury.

There are many facts that support JHA's argument that the parties did not intend to construe the contracts together. *See* R. 114 at 8-11. The defendants signed the contracts five weeks apart; the defendants signed the Core Director Agreement on February 14, 2005, and signed the EFT Agreement on March 31, 2005. *Id*. at 8. The contracts cover different products and services; the Core Director Agreement is essentially a software license contract and the EFT Agreement is an ATM services processing contract. *Id*. at 8-9. The software and ATM services can operate together, but they can also operate independently (and with products and services from other companies). *Id*. at 9. The two contracts do not reference each other nor do they make

any reference of incorporation of the other. *Id*. The contracts contain various inconsistent terms related to the length of the agreement (25 years vs. 5 years), form of payment (one time fee and annual maintenance fee vs. monthly fee), and dispute resolution (arbitration vs. none specified). *Id*. at 10. Also, the defendants terminated both contracts by separate letters. *Id*. at 11.

On the other hand, the defendants cite many facts that support construing the contracts together. *See* R. 113 at 8-14. They rely heavily on the fact that the banks entered into the contracts with JHA to obtain "real-time" services.[4] *Id*. at 8. The banks also wanted a "fully integrated system" from JHA rather than purchasing various products and services piece-meal from other companies. *Id*. JHA employees made a sales pitch to the banks about the benefits of such an integrated system. *Id*. at 10-11. JHA also delivered the EFT Agreement and Core Director Agreement to Bank President Mark Terry on the same date. *Id*. at 11. Further, the defendants signed the EFT Agreement and the Addendum to the Core Director Agreement on the same date. *Id*. at 12.

All of these facts (as well as the other facts mentioned in the parties' briefs) reveal that JHA has not met its burden of showing that there are no genuine issues of material fact as to whether the parties intended to construe the EFT Agreement and Core Director Agreement as one contract. The Court must view these facts in the light most favorable to the non-moving party, the defendant banks. *See Mo. Sav. Ass'n*, 862 F.2d at 1326 (citing *Anderson*, 477 U.S. at 248) (citation omitted). Accordingly, the Court must deny JHA's motion for summary judgment.

---

[4]"Real-time" services enable a bank to adjust a customer's account balance almost immediately upon the withdrawal of money from any ATM. R. 113 at 8.

9

## CONCLUSION

It is **ORDERED** as follows:

(1) JHA's motion to strike the affidavit of Mark Terry, R. 115, is **DENIED**.

(2) JHA's motion for summary judgment on its breach of contract claim, R. 58, is **DENIED**.

This the 23rd day of April, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge