UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JACK HENRY & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-292-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BSC, INC., et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Before the Court is the defendant, BSC Inc.'s ("BSC"), motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial. R. 196. Following a jury trial held on May 10-12, 2010, the jury returned a verdict in favor of the plaintiff, Jack Henry & Associates ("Jack Henry"), finding BSC liable for breach of contract. BSC argues that it cannot be held liable to Jack Henry because the contract involved in this case did not satisfy the Statute of Frauds. BSC further argues that Jack Henry did not introduce sufficient evidence showing that BSC was a party to the contract or that Jack Henry provided services under the contract consistent with industry standards. Finally, BSC asks the Court to grant a new trial because the Court improperly excluded its expert witness, Dr. Andrew Cobb.

The Court held oral argument on BSC's motion on September 2, 2010. Viewing the evidence in the light most favorable to Jack Henry, BSC's motion for Judgment as a Matter of Law must be denied. Further, the Court's exclusion of Dr. Cobb's expert testimony on a pre-trial *Daubert* motion was proper. Therefore, BSC's motion for a new trial is also denied.

# DISCUSSION

## I. Standard

The Court will grant a motion for judgment as a matter of law only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party" on an issue that was fully heard during the jury trial. Fed. R. Civ. P. 50(a)(1). In a diversity case, when a motion for judgment as a matter of law challenges the sufficiency of the evidence, the Court must apply the "standard of review used by the courts of the state whose substantive law governs the action." *Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006). As the parties agree, Missouri law governs this case, so Missouri law provides the standard of review. Under Missouri law, the test is whether the plaintiff made a "submissible case," *Erdman v. Condaire, Inc.*, 97 S.W.3d 85, 88 (Mo. Ct. App. 2002), meaning that the plaintiff must present "substantial evidence for every fact essential to liability." *Id.* The Court must view "the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff" and must "presume the plaintiff's evidence is true and disregard any of the defendant's evidence that does not support the plaintiff's case." *Id.* The Court will not overturn the jury's verdict "unless there is a complete absence of probative facts to support it." *Id.*

## II. Statute of Frauds

BSC first argues that Missouri's Statute of Frauds prevents Jack Henry from enforcing the EFT Agreement—which BSC never signed—against it. R. 196 at 5-7. BSC's argument fails for two reasons. First, BSC waived the Statute of Frauds defense by failing to raise it in its pre-verdict motion for judgment as a matter of law or otherwise during trial. And second, even if

2

BSC did not waive it, the Statute of Frauds is satisfied under the facts of this case.

    A.    **BSC Waived the Statute of Frauds Defense**

Although the Statute of Frauds is a state law defense, whether it was waived is a question of federal law. As the Sixth Circuit recently wrote, although in diversity actions "state law defines the *nature* of defenses," federal law "governs *procedural* rules." *Montgomery v. Wyeth*, 580 F.3d 445, 468 n.7 (6th Cir. 2009) (emphasis added); *see also Taylor v. United States*, 821 F.2d 1428, 1433 (9th Cir. 1987) ("Whether waiver [of state law affirmative defense] occurred is a question of federal law under the Federal Rules of Civil Procedure."); *Chapman v. Orange Rice Mill Co.*, 747 F.2d 981, 984 n.5 (5th Cir. 1984) ("While state law defines the nature of a defense in a diversity action . . . federal law provides . . . when waiver occurs."). Thus, federal law, and in particular the Federal Rules of Civil Procedure, determines whether BSC has waived its Statue of Frauds defense.

Under the Federal Rules, BSC's post-verdict motion for judgment as a matter of law may not raise new issues. The Court may only grant a post-verdict motion on grounds that BSC sufficiently identified in its pre-verdict motion. Rule 50(a)(2) requires that a motion for judgment as a matter of law "specify the judgment sought and the law and facts that entitle the movant to the judgment." A post-verdict motion for judgment as a matter of law "may not advance additional grounds that were not raised in the pre-verdict motion." *Kusens*, 448 F.3d at 349. And at any rate, judgment as a matter of law "is not available at anyone's request on an issue not brought before the court prior to submission of the case to the jury." *American & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 160 (6th Cir. 1997).

BSC did not adequately raise the Statute of Frauds in its pre-verdict motion for judgment as a matter of law. BSC claims that it preserved the Statute of Frauds defense by arguing in its pre-verdict motion that it was not a party to the EFT agreement and that the EFT agreement was "signed by the party to be charged," which BSC claims is "language from the Statute of Frauds." R. 215 at 6. This was not sufficient. If BSC wished to mount a Statute of Frauds defense, it should have argued the Statute of Frauds with more particularity. The Statute of Frauds is not some murky or ineffable legal concept, and neither the Court nor Jack Henry should have to search for it in the shadows. Using "language from the Statute of Frauds" is not the same as actually making an affirmative Statute of Frauds argument. Indeed, BSC did not even cite the Statute of Frauds. That is a critical omission, because there are two *different* Statutes of Frauds in Missouri—one for sales under the Uniform Commercial Code ("UCC"), Mo. Rev. Stat. § 400.2-201, and one for all other transactions, Mo. Rev. Stat. § 432.010. The UCC Statute of Frauds contains three exceptions that the general Statute of Frauds lacks. These exceptions are for specially-manufactured goods, partial payment and performance, and acknowledgment of a contract in pleadings or testimony in court. § 400.2-201(3). By failing to specifically mention or cite the Statute of Frauds in general, much less which of the two Missouri Statues of Frauds it relied upon, BSC did not "specify . . . the law and facts" that entitled it to judgment, as required by Rule 50(a)(2).

BSC argues that the Court should construe its pre-verdict motion liberally "in light of the purposes of the rule, *i.e.*, to provide notice to 'the court and opposing counsel of any deficiencies in the opposing party's case prior to sending it to the jury.'" *Id.* at 6 (quoting *Kusens,* 448 F.3d

4

at 361). But BSC's pre-verdict motion did not fulfill the purpose of the rule. It did not specifically cite the Statute of Frauds at all and therefore failed to give notice to either the Court or Jack Henry that BSC intended to raise a Statute of Frauds defense. If BSC had specifically identified which Statute of Frauds it was invoking, perhaps Jack Henry would have introduced more evidence showing that the Statue was satisfied. But we will never know what evidence Jack Henry would have introduced or what arguments Jack Henry would have made because BSC did not cite the Statute of Frauds—either of them.. Therefore, because BSC did not sufficiently identify the Statute of Frauds defense in its pre-verdict motion for judgment as a matter of law, it waived that defense for purposes of its post-verdict motion.

### B. The Statute of Frauds was Satisfied

Even if BSC did not waive the Statute of Frauds defense, the Statute of Frauds was satisfied. At a minimum, three documents satisfy the Statute of Frauds: (1) the EFT Agreement, (2) the termination letter, and (3) the Deconversion Agreement. Under Missouri law, "[t]o satisfy the statute of frauds, it is not essential that a writing be a single document. Instead, the agreement may be contained in separate writings when the separate writings, taken together, meet the requirements of the statute." *In re Estate of Looney*, 975 S.W.2d 508, 515 (Mo. Ct. App. 1998). In this case, the EFT Agreement itself memorializes the terms of the agreement. Although BSC did not sign the EFT Agreement, BSC did sign two other documents that specifically acknowledge that BSC was a party to the EFT Agreement. The first sentence in the Deconversion Agreement recites: "Whereas, Jack Henry & Associates, Inc. (JHA) and BSC INC. formerly FIRST CORBIN DATA, 2400 S. MAIN ST, CORBIN KY 40701 (Client) *entered*

5

*into an Electronic Funds Transfer Processing Services Agreement . . . .*" R. 212 Attach. 8 (emphasis added). The termination letter begins with a similar acknowledgment, and is written on BSC stationary. R. 212 Attach. 5. And Mark Terry, President of BSC, signed both the Deconversion Agreement and the termination letter. These documents, taken together, show that the parties understood the contractual relationship with Jack Henry to extend to both First Corbin Bancservices and BSC.

BSC's argument that the parol evidence rule prohibits the Court from considering the termination letter and the Deconversion Agreement is wrong. First, these two documents are not parol evidence at all. Parol evidence is limited to "prior or contemporaneous agreements." *Topper v. Midwest Div., Inc.*, 306 S.W.3d 117, 130 (Mo. Ct. App. 2010). Writings subsequent to the execution of the contract are not parol evidence. And at any rate, Missouri law specifically permits interrelated documents, taken together, to satisfy the Statute of Frauds.

During oral argument on this motion, BSC also claimed that the integration and modification clause in the EFT Agreement—which requires any changes to the contract to be in "a duly executed written document signed by the parties," R. 1 Attach. 1 at 7—prohibits the Court from finding that the termination letter and the Deconversion Agreement satisfy the Statute of Frauds. BSC is incorrect. The Court is not considering whether the termination letter and the Deconversion Agreement validly modified the original contract. Instead, the question is whether BSC's signature on these documents satisfies the Statute of Frauds so that Jack Henry can hold BSC liable on the *original* agreement. Because both the termination letter and the Deconversion Agreement bear Mark Terry's signature and acknowledge that BSC was a party to the EFT

6

Agreement, they satisfy the Statute of Frauds.

### III. The Jury Could Find that BSC was a Party to the EFT Agreement

BSC next argues that it cannot be held liable because there was no evidence that it was a party to the EFT Agreement. R. 196 at 9-10. This argument also fails. Because the EFT agreement was ambiguous, the Court properly admitted extrinsic evidence from which a reasonable jury could conclude that BSC was a party to the agreement.

The EFT agreement was ambiguous as to who, exactly, the parties to the agreement were. The EFT agreement lists First Corbin Data (BSC's predecessor) as the client, and the pre-printed signature block also lists First Corbin Data. Dorsey Hall, President of First Corbin Bancservices, crossed out "Data" and wrote "Bancservices" in the signature block and signed his name. The discrepancy between the listed client and the signature creates an ambiguity regarding the actual parties to the agreement.[1] "To consider whether a contract is ambiguous, [the court should] consider the whole instrument and give the words in the contract their natural and ordinary meaning." *PlaNet Productions, Inc. v. Shank*, 119 F.3d 729, 732 (8th Cir. 1997) (citing Missouri law). The ambiguity in this case is patent (rather than latent) because it is apparent from the face of the agreement. *Finova Capital Corp. v. Ream*, 230 S.W.3d 35, 48-49 (Mo. Ct. App. 2007).

---

[1] BSC quotes a colloquy between the Court and Jack Henry's counsel in which the Court said, while examining the EFT agreement, that "Corbin Bancservices seems pretty unambiguous to me." R. 215 at 4. BSC argues that the Court's statement proves that there was no ambiguity in the contract. BSC is incorrect. The Court's statement was not a legal ruling. It was merely part of a dialogue with counsel about the governing law. Upon further reflection, the Court concludes that the discrepancy between the listed client (BSC) and the actual signatory (First Corbin Bancservices) renders the EFT agreement ambiguous.

7

Because the EFT agreement is ambiguous regarding the actual parties to the contract, the Court properly admitted extrinsic evidence bearing on the issue. "[T]he cardinal principle is to determine the intent of the parties," and any evidence probative of that intent may be considered. *Finova Capital*, 230 S.W.3d at 49. This includes "the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties." *Id.* Under this standard, the Court properly admitted extrinsic evidence, including the termination letter and the Deconversion Agreement, demonstrating that BSC had a contractual relationship with Jack Henry. Because "the contract [was] ambiguous, and extrinsic evidence [was] proper, . . . construction of the agreement [was] for the jury under proper instructions from the court." *Busch & Latta Painting Corp. v. State Hwy. Comm'n*, 597 S.W.2d 189, 197-98 (Mo. Ct. App. 1980). Viewing the evidence in the light most favorable to Jack Henry, the jury could conclude that BSC was a party to the contract. The Court cannot say that there is "a complete absence of probative facts to support" the jury's conclusion. Therefore, judgment as a matter of law is improper. *Erdman*, 97 S.W.3d at 88.

IV. **Industry Standards**

BSC's next argument is that Jack Henry failed to establish that it provided processing services under the EFT Agreement that were consistent with industry standards. In the "Warranties" section of the EFT Agreement, Jack Henry promised "to provide the Processing Services . . . in a competent manner consistent with industry standards." R. 1 Attach 1 at 5. As

8

BSC correctly points out, R. 196 at 13, to prevail on its breach of contract claim against BSC, Jack Henry was required to prove that it "performed in accordance with the terms of the contract." *S. G. Adams Printing & Stationary Co. v. Cen. Hardware Co.*, 572 S.W.2d 625, 629 (Mo. Ct. App. 1978). BSC argues that Jack Henry failed to establish that it performed under the contract because it did not introduce sufficient evidence to establish the applicable industry standard. Therefore, according to BSC, there was no way for the jury to determine that Jack Henry's performance was consistent with that industry standard. Here again, BSC's argument is not persuasive.

First, BSC incorrectly assigns the burden of proof to Jack Henry. Jack Henry's promise to provide processing services consistent with industry standards was a *warranty*, and under Missouri law, breach of warranty is an affirmative defense that the defendant must plead and prove. *See Kallenbach v. Varner,* 502 S.W.2d 446, 448 (Mo. Ct. App. 1973) ("When breach . . . of warranty is available, it may be used either as a counterclaim or pleaded as a defense in recoupment. Recoupment is an affirmative defense which the defendant must plead and prove."). It was BSC's burden to show that Jack Henry breached the warranty; it was not Jack Henry's burden to show that it did not breach the warranty. *See Smith v. Ohio Millers Mut. Fire Ins. Co.*, 26 S.W.2d 962, 967 (Mo. 1930) ("As to promissory warranties and conditions subsequent, it is not necessary to negative a breach of such warranties; such a breach would constitute an affirmative defense."). In other words, to prove that Jack Henry breached its warranty, BSC should have introduced evidence establishing the industry standard and showing that Jack Henry's performance fell below it. But, under Missouri law, Jack Henry was not required to

affirmatively establish, as part of its prima facie case, that it did *not* breach the warranty, *i.e.*, that it performed consistent with industry standards.

But even if it was part of Jack Henry's prima facie case for recovery, Jack Henry introduced sufficient evidence from which a reasonable jury could discern the industry standard and also determine that Jack Henry performed consistent with the industry standard. Two witnesses testified about Jack Henry's performance in relation to industry standards. John Postle testified about the reliability of Jack Henry's switch and Suzanne Savage provided expert testimony comparing Jack Henry's performance to the STAR Network Operating Rules. BSC argues that this was not enough—that Jack Henry introduced "no competent evidence that it complied with industry standards." R. 196 at 13-14. BSC cites a portion of Savage's testimony in which she conceded that Jack Henry's industry does not have any trade groups or other organizations that set uniform, industry-wide standards. BSC argues that this admission is "fatal to Jack Henry's case." R. 215 at 13. It is not.

What the industry standard is, and whether Jack Henry performed in conformity with that standard, are questions of fact for the jury. *See Nygren v. Greater New York Mut. Ins. Co.*, 2009 WL 807470, *5 (D. Conn. 2009) ("[T]he Court believes that it is best left to the jury to decide whether any industry standards or practices have been violated."). Jack Henry introduced sufficient evidence from which a reasonable jury could deduce an industry standard. Just because there is no industry-wide trade group does not mean that the industry lacks standards. A reasonable jury can deduce industry standards from the practices of individual companies within an industry. The STAR Network is a particularly large company in the payment processing

10

industry. Savage's testimony showed that Jack Henry's performance exceeded the STAR Network's Operating Rules. Savage also testified that, in her opinion, Jack Henry's performance exceeded industry standards. It is true that Savage based her opinion only on the STAR Network, and she admitted that there was no industry-wide body that set standards. But these facts only go to the *weight* of Savage's testimony. It was the jury's decision whether to accept or reject her testimony. The jury apparently accepted it. Viewing "the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff," the Court cannot say that "there is a complete absence of probative facts to support" the jury's conclusion that Jack Henry's performance was consistent with industry standards. *Erdman*, 97 S.W.3d at 88. Comparing Jack Henry's performance to the STAR Network is like comparing the performance of a retailer to Wal-Mart or a computer manufacturer to IBM. The jury was not required to find that the practices of one of the industry's largest players set the industry standard, but it is a conclusion that the jury was permitted to reach.

BSC's arguments to the contrary, and the case law that it cites, are unpersuasive. BSC cites several different cases to support the proposition that "[i]ndustry standards refer to standards adopted by an industry as a whole" and that the practices of a single company do not establish industry standards R. 196 at 15. But these cases, as Jack Henry points out, are all *Daubert* cases. In each, the court excluded expert testimony as unreliable because, among other reasons, the expert did not base his opinion on any identifiable industry standards. But whether an expert's testimony is reliable under *Daubert* is an entirely different question from whether the jury could reasonably deduce an industry standard from the evidence admitted in this case. Under *Daubert*,

the proponent of the expert testimony bears the burden of proving that the testimony "rests on a reliable foundation and is relevant to the task at hand." *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 915 (6th Cir. 2009). Here, though, the Court must view all of the evidence in the light most favorable to the plaintiff and will only grant judgment as a matter of law if there is a complete absence of facts supporting the verdict. If BSC had objected to Savage's testimony and asked for a *Daubert* hearing before trial, it is entirely possible that the Court could have excluded her testimony as unreliable. But BSC did not object, and the Court cannot say that there was a complete absence of facts from which the jury could deduce an industry standard and find that Jack Henry's performance complied with those standards.

Further, even if BSC did not establish that its performance was consistent with industry standards, that fact alone would not preclude BSC from recovering against Jack Henry under the contract. Under Missouri law, only a *material* breach would preclude Jack Henry recovering against BSC under the EFT Agreement. *Guidry v. Charter Communications, Inc.*, 269 S.W.3d 520, 531 (Mo. Ct. App. 2008) ("A party cannot claim the benefit of a contract that it was the first to breach, but this rule applies only when the breach is material.") (internal citations omitted). "Whether a breach is material or immaterial is a question of fact." *Id.* It was for the jury to decide whether Jack Henry's performance materially breached its warranty to provide processing services in a manner consistent with industry standards. Suzanne Savage's testimony that Jack Henry's performance compared favorably to the STAR Network's Operating Rules and John Postle's testimony about Jack Henry's network performance are sufficient bases for a reasonable jury to conclude that, even if Jack Henry did breach the contract, that breach was not material.

In other words, a reasonable jury could conclude that Jack Henry substantially performed its contractual obligations, and "[s]ubstantial performance of a contract is sufficient to permit recovery." *Carl v. Dickens*, 809 S.W.2d 466, 468 (Mo. Ct. App. 1991). For these reasons, the Court must also deny BSC's motion for judgment as a matter of law on this ground.

V.   **Exclusion of Dr. Andrew Cobb's Expert Testimony**

BSC also asks the Court to grant a new trial because it improperly excluded the expert testimony of Dr. Andrew Cobb. The Court explained its reasons for excluding Dr. Cobb's testimony in its Order of April 14, 2010. R. 116. The Court declines to rehash this already heavily-litigated issue. Therefore, BSC's motion for a new trial is denied.

## CONCLUSION

For these reasons, BSC's motion for judgment as a matter of law or, in the alternative, for a new trial, R. 196, is **DENIED**.

This the 7th day of September, 2010.



Signed By:
*Amul R. Thapar*
United States District Judge