UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JACK HENRY & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-292-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BSC, INC., et al., | ) | **& ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The defendant, BSC, Inc., filed a motion to alter or amend the Court's Judgment entered on September 9, 2010. R. 226. BSC argues that the Court erred by awarding Jack Henry prejudgment interest at a rate of 18% per annum from November 28, 2007, to the date of the Judgment. R. 226, Attach. 1 at 35-40. The plaintiff, Jack Henry & Associates, filed a response. R. 235. The Court stayed execution of the Judgment pending the resolution of BSC's motion. R. 231. For the following reasons, the Court will alter the Judgment to push back the date on which prejudgment interest began to accrue from November 28, 2007, to December 18, 2007. All other aspects of the Judgment will remain the same.

**DISCUSSION**

Missouri law governs Jack Henry's entitlement to prejudgment interest. In a diversity case, state law determines whether a prevailing party may receive prejudgment interest. *See Poundstone v. Patriot Coal Co.*, 485 F.3d 891, 901 (6th Cir. 2007). The EFT Agreement at the center of this case specifies that it is "governed by the laws of the State of Missouri." R. 1, Attach. 2 at 7. As the parties agreed, the Court applied Missouri law to all substantive issues in

the case. But BSC argues that the forum state's law—in this case, Kentucky—governs prejudgment interest. BSC is incorrect. When the law of another state governs an action pursuant to a contract, that state's law will also govern the award of prejudgment interest. *See FDIC v. First Heights Bank, FSB*, 229 F.3d 528, 534, 542-43 (6th Cir. 2000) (applying Texas law to issue of prejudgment interest, not forum state's law, where terms of contract specified that Texas law governed). BSC's citation to *Rhea v. Massey-Ferguson, Inc.*, 767 F.2d 266, 260 (6th Cir. 1985), is not to the contrary. In that case, there was no contract specifying that another state's law applied, so the forum state's law governed prejudgment interest by default. Here, in contrast, the EFT agreement clearly states that Missouri law controls. It would be a strange rule indeed that would require the Court to carve out the issue of prejudgment interest and apply Kentucky law to it while Missouri law governs the rest of the case. BSC has provided no authority that would support such a rule. Accordingly, Missouri law governs the award of prejudgment interest.

Under Missouri law, prejudgment interest is available for contract damages if those damages are liquidated, meaning they are "fixed and determined or readily ascertainable by computation or a recognized standard." *Jablonski v. Barton Mutual Ins. Co.*, 291 S.W.3d 345, 350 (Mo. Ct. App. 2009). In this case, the jury found that BSC breached the EFT Agreement, thereby entitling Jack Henry to the early termination fee described in section three of the Agreement. That section provides a formula for calculating the early termination fee. The fee equals "the average monthly billing exclusive of pass through cost . . . for the past twelve months multiplied by the number of months . . . remaining in the contract term." R. 1, Attach. 2 at 2.

2

The Agreement also provides that the early termination fee is "immediately due and payable" upon "receipt of [BSC's] intention to" terminate Jack Henry's processing services. *Id.* At the time of BSC's breach, the amount of the termination fee was "readily ascertainable by computation." *Jablonski*, 291 S.W.3d at 350. Either party could have used the EFT Agreement, the billing records, and a calculator to figure out the amount of the early termination fee. The math might have been a little challenging, but that does not mean that the amount was not readily ascertainable. Accordingly, the damages in this case are liquidated.

BSC raises several arguments against Jack Henry's entitlement to prejudgment interest. None of them are correct. First, BSC argues that *Children Int'l v. Ammon Painting Co.*, 215 S.W.3d 194 (Mo. Ct. App. 2007), compels finding that Jack Henry's damages were not liquidated. In that case, the Missouri Court of Appeals held that contract damages were not liquidated because calculating the damages would have required "variable, speculative, and uncertain" estimates of several different cost items. *Id.* at 203-04. But there is nothing "variable, speculative, and uncertain" about the early termination fee in this case. The EFT Agreement provided a formula, and at the time of the breach, all of the parties had the numbers to plug into that formula. Although strong math skills were necessary, no guesswork was required.

BSC also argues that the damages were not liquidated because it asserted a counterclaim against Jack Henry. R. 226, Attach. 1 at 36. BSC is incorrect. Under Missouri law, if the amount of damages is readily ascertainable, then neither disputing liability nor filing a counterclaim or a crossclaim renders the damages unliquidated. *See Jerry Bennett Masonry, Inc. v. Crossland Constr. Co.*, 171 S.W.3d 81, 90 (Mo. Ct. App. 2005) ("The mere fact that a party

3

denies liability or defends a claim against him, or even the existence of a bona fide dispute as to the amount of the indebtedness, does not preclude recovery of interest . . . .") (quoting *Twin River Constr. Co. v. Pub. Water Dist.*, 653 S.W.2d 682, 695 (Mo. Ct. App. 1983)); *Bolivar Insulation Co. v. R. Logsdon Builders, Inc.*, 929 S.W.2d 232, 236 (Mo. Ct. App. 1996) ("[T]he fact that Owner interposed a crossclaim against Logsdon with respect to the amount owed did not render Logsdon's claim unliquidated . . . .").

Finally, BSC argues that Jack Henry waived any claim to prejudgment interest by failing to submit the claim to the jury. R. 226, Attach. 1 at 36-37. But BSC only cites a single Kentucky case for the proposition that claims for prejudgment interest must be submitted to the jury or they are waived, *id.*, and Missouri cases have held the exact opposite. *See Holtmeier v. Dayani*, 862 S.W.3d 391, 406 (Mo. Ct. App. 1993) ("It is not necessary for evidence to be presented or for a jury to be instructed on the subject where prejudgment interest is only a matter of mathematical computation."). Therefore, Jack Henry did not waive its right to recover prejudgment interest by not submitting the claim to the jury. Accordingly, because the amount of the early termination fee was readily ascertainable at the time of BSC's breach, those damages were liquidated and an award of prejudgment interest is mandatory. *See Columbia Mut. Ins. Co. v. Long*, 258 S.W.3d 469, 480 (Mo. Ct. App. 2008) ("Where the damages involved are liquidated, application of section 408.020 [directing courts to award prejudgment interest] is mandatory, rather than discretionary.").

The only remaining questions are how much and for how long? Under Missouri law, contract creditors are "allowed to receive interest at the rate of nine percent per annum, when no

other rate is agreed upon, for all moneys after they become due and payable." Mo. Rev. Stat. § 408.020. Nine percent is the default rate when the parties do not agree on another rate. Here, Jack Henry and BSC agreed to a rate of eighteen percent in section nine of the EFT Agreement. That section provides that "[a]mounts outstanding after the due date are subject to an interest charge to date of payment of the lesser of 18% per annum or the highest legally allowable rate." R. 1, Attach. 2 at 4. Under section three, the early termination fee was immediately due and payable on November 28, 2007—the date on which Jack Henry received notice of BSC's intention to de-convert. Accordingly, section nine made the early termination fee subject to an interest rate of eighteen percent from November 28, 2007, onwards.

BSC argues that section nine of the EFT Agreement does not apply to the early termination fee. R. 226, Attach. 1 at 37-39. That is because, BSC contends, the eighteen percent interest rate contained in section nine "applies only to outstanding charges for products and processing services." *Id.* at 37. The text of section nine does not support the limited construction that BSC gives it. The most straightforward reading of the section is that it spells out general terms governing the payment of all fees due under the contract, including the early termination fee. Section nine is broadly titled "Payment." Although the first two sentences refer to "Products" and "Processing Services," other sentences refer to other fees, including "set-up fees," "annual fees," and "network pass-through fees." The fifth sentence in section nine—the sentence that imposes the interest rate on "amounts outstanding after the due date"—is not limited to fees for products and processing services. It is written in general terms and applies to all fees due under the agreement. Under section three, BSC owed Jack Henry the early

5

termination fee as of November 28, 2007. Thereafter, the early termination fee was an "[a]mount outstanding after the due date," and as such was "subject to an interest charge to date of payment of the lesser of 18% per annum or the highest legally allowable rate." BSC has not directed the Court to any Missouri authority that would limit the interest rate to less than eighteen percent. Accordingly, the proper interest rate is eighteen percent.

When did the prejudgment interest start to accrue? Although under the terms of the EFT Agreement the early termination fee was due on November 28, 2007, BSC argues that Jack Henry was not entitled to prejudgment interest until it demanded payment. R. 226, Attach. 1 at 39-40. This argument does find support in Missouri case law. In *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 111 (Mo. Ct. App. 2004), the Missouri Court of Appeals held that "prejudgment interest on liquidated claims is allowed only after demand of payment is made." Jack Henry demanded payment of the early termination fee on December 18, 2007. On that date, Jack Henry sent a termination agreement to BSC which demanded payment of the early termination fee. *See* R. 235, Attach. 3. Accordingly, the Court will modify the award of prejudgment interest to specify that the interest accrues from December 18, 2007, to the date of the Judgment.

## CONCLUSION

For these reasons, it is **ORDERED** as follows:

(1) BSC's motion to alter or amend the Judgement, R. 226, is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent it seeks to delay the onset date of prejudgment interest until December 18,

2007. The motion is **DENIED** in all other respects. The Amended Judgment will be filed contemporaneously with this opinion.

(2) BSC shall pay Jack Henry prejudgment interest on the damages awarded in the Court's Judgement entered on September 9, 2010, R. 224, calculated at a rate of **eighteen percent per annum** from **December 18, 2007, to September 9, 2010**.

(3) The stay on the Court's Judgment, R. 231, is **VACATED**.

(4) Jack Henry's Motion for an Order lifting the Stay, R. 242, is **DENIED AS MOOT**.

This the 20th day of October, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge