UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JACK HENRY & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-292-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BSC, INC., et al., | ) | **& ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

There are several motions pending before the Court. Jack Henry has filed a motion to amend the Judgment to include postjudgment interest, R. 233, a motion for attorney's fees, R. 238, and a motion to include postjudgment interest in the amended Judgment and the supersedeas bond, R. 248. The Court will dispose of all of these motions in this Order. The Court will also, in accordance with its Order of October 21, 2010, R. 246, advise BSC that it must post a supersedeas bond in the amount of $2,366,382.50 for the Court to approve the bond and stay its Judgment pending appeal. *See* Fed. R. Civ. P. 62(d).

**DISCUSSION**

**I.     Jack Henry's Motion for Postjudgment Interest, R. 233.**

Jack Henry filed a motion to alter the Court's Judgment to include an award of postjudgment interest. R. 233. Jack Henry asks the Court to award postjudgment interest at a rate of eighteen percent—equivalent to the prejudgment interest rate that the Court awarded based on the EFT Agreement. R. 244. BSC argues, in contrast, that the Court should set postjudgment interest at the rate specified in 28 U.S.C. § 1961.

In diversity cases, state law governs prejudgment interest and federal law governs postjudgment interest. *See Estate of Riddle v. Southern Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005). Following this rule, the Court awarded Jack Henry prejudgment interest at a rate of eighteen percent in accordance with Missouri law and the EFT Agreement. R. 243 at 4-6. But § 1961 sets the rate for postjudgment interest in federal court. *See Scotts Co. v. Central Garden & Pet Co.*, 403 F.3d 781, 792 (6th Cir. 2005). That statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The statute further provides that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." *Id*.

So, which rate applies? Is it the contract rate (eighteen percent) or the statutory rate (which works out to be 0.22%)? The answer hinges on two questions: (1) can parties contract around § 1961 and agree to a different postjudgment interest rate?; and (2) if so, did BSC and Jack Henry contract around § 1961 in the EFT Agreement? Although parties may agree to their own postjudgment interest rate by contract, BSC and Jack Henry did not clearly and unequivocally do so in this case. Accordingly, the Court will award postjudgment interest at the rate specified in § 1961.

**(1)    Can Parties Contract Around § 1961?**

Section 1961 uses mandatory language. It dictates that "[i]nterest *shall* be allowed" on money judgments in district courts and that "[s]uch interest *shall* be calculated" using the formula

specified in the statute. 28 U.S.C. § 1961(a) (emphasis added). Nevertheless, most courts that have addressed the question have held that parties may contract around § 1961 and agree to a different postjudgment interest rate. *See, e.g.*, *FCS Advisors, Inc. v. Fair Finance Co.*, 605 F.3d 144, 147-48 (2d Cir. 2010); *In re Riebesell*, 586 F.3d 782, 794 (10th Cir. 2009); *Cent. States, SE & SW Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1020 (7th Cir. 2001); *In re Lift & Equip. Serv., Inc.*, 816 F.2d 1013, 1018 (5th Cir. 1987). The Sixth Circuit has not yet squarely addressed this question. *See Comerica Bank v. Stewart*, No. 09-cv-13421, 2009 WL 4646894, at *3-4 (E.D. Mich. Dec. 8, 2009). Therefore, the Court must determine whether parties may contract around § 1961 without direct, binding guidance from the circuit court.

"The general rule of our law is freedom of contract, subject only to statute and considerations of the public interest." *Smith v. The Ferncliff*, 306 U.S. 444, 450 (1939). Parties can agree to almost anything in contracts. *See, e.g.*, *Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co.*, 77 F. 288 (6th Cir. 1896). Only a few limited areas have been placed out-of-bounds. For example, parties cannot create federal subject matter jurisdiction by contract, *see Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 608 (6th Cir. 1998) (overruled on other grounds), and courts "may refuse to enforce contracts that violate law or public policy." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 42 (1987) (citations omitted). But unless some law or readily identifiable public policy removes an area from freedom of contract's realm, courts will enforce an agreement between parties.

Nothing in § 1961 indicates that Congress sought to limit freedom of contract with respect to postjudgment interest. The text of § 1961 does not expressly limit parties' ability to agree to

3

a different postjudgment interest rate. As the Second Circuit has explained, § 1961's mandatory language was "aimed mainly at precluding district courts from exercising discretion over the rate of interest or adopting an interest rate set by arbitrators, . . . not at limiting the ability of private parties to set their own rates through contract." *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 101 (2d Cir. 2004). And neither BSC nor Jack Henry has identified any concrete public policy that would prohibit parties from agreeing to their own postjudgment interest rates. Of course, contracts specifying a postjudgment interest rate must, like all contracts, be valid—they must comport with general contract law, including state usury laws. *Id.* at 102. But a valid contract may supplant the § 1961 postjudgment interest rate with a different rate.

This reasoning squares with the holding of every circuit court that has addressed the question. But although there is a veritable wave of cases squarely holding that parties can contract around § 1961, there are some significant problems with the analysis in these courts' opinions. Many of the decisions are entirely devoid of reasoning. Instead, like a cascade, the decisions simply cite to one another and claim that the rule is "well established." *See Central States*, 253 F.3d at 1020. Following the trail of citations back to their genesis leads to the Ninth Circuit's decision in *Investment Service Co. v. Allied Equities Corp.*, 519 F.2d 508 (9th Cir. 1975). As another district court recently recognized, *Investment Service* is a strange foundation for the rule that parties may contract around § 1961. *See BP Prods. of North Am., Inc. v. Youssef*, 296 F. Supp. 2d 1351, 1353-54 (M.D. Fla. 2004). Although the court in *Investment Service* held that the contractual interest rate was also the postjudgment interest rate, at the time § 1961 provided for postjudgment interest at "the rate allowed by state law." Both parties in the case

4

agreed that Oregon law, not federal law, set the postjudgment interest rate. *Id.* at 1354. And an Oregon statute specifically provided that judgments based on contracts would bear interest at the contract rate. *Id.* at 1353. But Congress amended § 1961 in 1982 to substitute the Treasury bill rate for the state law rate. *Id.*; *see Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 839 (1990). Therefore, although *Investment Service* reached the correct result under the law as it existed in 1975, it is highly questionable whether the same reasoning would apply to § 1961 after the 1982 amendment.

Nevertheless, courts cited to *Investment Service* as authority for the proposition that parties may contract around § 1961, even after Congress amended the statute. The first decision that so held was *In re Lift & Equipment Service, Inc.*, 816 F.2d 1013, 1018 (5th Cir. 1987), in which the Fifth Circuit cited *Investment Service* for the rule that "[w]hile 28 U.S.C. § 1961 provides a standard rate of postjudgment interest, the parties are free to stipulate a different rate, consistent with state usury and other applicable laws." *In re Lift*, in turn, was the basis for the same holding in *Hymel v. UNC, Inc.*, 994 F.2d 260, 266 (5th Cir. 1993), which was the basis for the same holding in *Central States*, 253 F.3d at 1020, which was the basis for the same holding in *Westinghouse,* 371 F.3d at 101, and so on. Each case cited to the previous cases, accompanied by little or no additional explanation, even though the entire line of cases rests on *Investment Service*—a case that arguably is no longer good law.

While the Court takes the line of circuit court cases rooted in *Investment Service* with a big grain of salt, the general rule that parties can agree to a different postjudgment interest rate than the rate specified in § 1961 is still a sound one. As the district court in *Youssef* concluded

5

after recounting *Investment Service*'s questionable progeny, the cases are still "probably correct in stating that parties can agree to a contractual rate of interest in place of the standard statutory rate in the event of a judgment—presumably, parties can agree to almost anything." 296 F. Supp. 2d at 1354.

Resisting this conclusion, BSC cites *Associates Commercial Corp. v. Ratliff*, No. 90-5962, 1991 WL 93108 (6th Cir. June 4, 1991). In this exceedingly brief, unpublished, per curiam decision, the Sixth Circuit stated that "the district court erred in allowing postjudgment interest at the rate provided in the promissory note, rather than the rate derived from the application of 28 U.S.C. § 1961." *Id.* at *1. But both parties in that case *agreed* that § 1961 applied. *Id.* There was no real controversy before the court, and the court undertook no real analysis. The entire opinion in *Ratliff* is only five sentences long. The court simply remanded the case to the district court to set postjudgment interest in accordance with the rate that both parties agreed applied. *Id.* Accordingly, *Ratliff* does not represent the Sixth Circuit's considered decision on the question of whether parties can contract around § 1961. It is still an open issue in this circuit. *Comerica Bank,* 2009 WL 4646894, at *3.

Therefore, parties may contract around § 1961 and agree to a different postjudgment interest rate. This holding accords with the decisions of every circuit court that has addressed the question. And even though many of those decisions rest on a line of cases built upon a questionable foundation, the general rule of freedom of contract compels this result, despite § 1961's mandatory language.

### (2) Did Jack Henry and BSC Contract Around § 1961 in this Case?

Having established that parties may contract around § 1961, the Court must determine whether Jack Henry and BSC did so in this case. Jack Henry says that they did. According to Jack Henry, section nine of the EFT Agreement represents an agreement between the parties that any judgment will bear eighteen percent interest. Section nine provides that "[a]mounts outstanding after the due date are subject to an interest charge to date of payment of the lesser of 18% per annum or the highest legally allowable rate." *See* R. 1, Attach. 2 at 4.

This language does not constitute an agreement on postjudgment interest sufficient to displace the interest rate specified in § 1961. Federal law governs postjudgment interest, *Estate of Riddle*, 421 F.3d at 409, and federal law requires "language expressing an intent that a particular interest rate apply to judgments or judgment debts" to be "clear, unambiguous and unequivocal." *FCS Advisors*, 605 F.3d at 148. Simply specifying a general interest rate for debts under a contract does not constitute an agreement on postjudgment interest. *See Comerica Bank*, 2009 WL 4646894, at *4 ("[A] default rate of interest, without more, does not amount to a postjudgment rate of interest."). That is because, under federal law, "[o]nce a claim is reduced to judgment, the original claim is extinguished and merged into the judgment; and a new claim, called a judgment debt, arises." *Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91, 95 (2d Cir. 1972); *see also In re Riebesell*, 586 F.3d at 794 (applying "the general rule that a cause of action reduced to judgment merges into the judgment and the contractual interest rate therefore disappears for postjudgment purposes"); *Westinghouse*, 371 F.3d at 102 ("The general rule under

New York and federal law is that a debt created by contract merges with a judgment entered on that contract, so that the contract debt is extinguished and only the judgment debt survives.").

Because the original contract claim merges into the judgment and is extinguished, an interest rate that applies to amounts due under the contract does not automatically apply to the judgment on that contract. The parties must explicitly state that they are agreeing to a postjudgment interest rate. For example, in *In re Riebesell*, 586 F.3d at 794-95, the Tenth Circuit held that a provision in a promissory note providing that amounts due "shall accrue interest until payment at the rate of twenty-four percent (24%) per annum or the highest rate permitted by law, whichever is less," did not constitute an agreement on postjudgment interest. Because the promissory note did not clearly and unambiguously specify that the interest rate applied to judgments, the parties had not "specifically contract[ed] around the general rule that a cause of action reduced to judgment merges into the judgment and the contractual interest rate therefore disappears for postjudgment purposes." *Id.* at 794. The language in the EFT Agreement between Jack Henry and BSC is nearly identical to the promissory note in *In re Riebesell*. Section nine of the EFT Agreement provides that "[a]mounts outstanding after the due date are subject to an interest charge to date of payment of the lesser of 18% per annum or the highest legally allowable rate." *See* R. 1, Attach. 2 at 4. Just as this language was not sufficient to displace § 1961 in *In re Riebesell*, neither is it sufficient to displace § 1961 here. Although amounts due under the EFT Agreement are subject to an interest rate of eighteen percent, the judgment on Jack Henry's contract claims extinguished those contract claims and replaced them with a judgment debt.

If BSC and Jack Henry had intended to agree to a postjudgment interest rate, they should have said so more explicitly. For example, in *Chesapeake Fifth Ave. Partners, LLC v. Somerset Walnut Hill, LLC*, No. 3:08cv764, 2009 WL 1298217, at *2-3 (E.D. Va. May 8, 2009), the district court held that the parties had agreed to a postjudgment interest rate with sufficient specificity where the promissory note stipulated that "[i]f judgment is entered . . . on this Note, the amount of the judgment so entered shall bear interest at the Default Rate as of the date of entry of the judgment." With that provision, the parties explicitly contracted around the general rule that the judgment extinguishes the contract claim by providing that the contract rate would also apply to judgments. The EFT Agreement, in contrast, does no such thing. Accordingly, although parties are free to contract around § 1961 and agree to a different postjudgment interest rate, Jack Henry and BSC did not do so in this case.

Jack Henry resists this conclusion by arguing that, under *Missouri* law, a contractual interest rate applies to judgments on the contract. R. 233, Attach. 1 at 3. Although Mo. Rev. Stat. § 408.040 provides that "judgments and orders for money upon contracts bearing more than nine percent interest shall bear the same interest borne by such contracts," Jack Henry is incorrect that Missouri law governs postjudgment interest in this case. The Sixth Circuit has been very clear that *federal* law, not state law, governs a prevailing party's entitlement to postjudgment interest. *See Estate of Riddle*, 421 F.3d at 409 (quoting *FDIC v. First Heights Bank, FSB,* 229 F.3d 528, 542 (6th Cir. 2000)). Federal law controls even though the EFT Agreement stipulates that it is governed by the laws of Missouri. *See FCS Advisors*, 605 F.3d at 148 ("[A] general choice-of-law provision . . . does not alter the application of the federal rate to the calculation of

9

post-judgment interest in diversity cases."). Although Jack Henry is correct that some of the circuit court decisions, such as *Westinghouse*, 371 F.3d at 102, "looked to" state law in interpreting contractual provisions concerning postjudgment interest, the case law in this circuit is very clear that federal law controls. And the clear weight of authority is that the federal rule requires contracts setting postjudgment interest rates to be clear and unambiguous because contract claims merge into judgments and are extinguished. *In re Riebesell*, 586 F.3d at 794. Indeed, Jack Henry has not cited to any federal cases holding that the parties successfully contracted around § 1961 using language similar to that found in the EFT Agreement.

Therefore, the EFT Agreement did not clearly and unambiguously establish a postjudgment interest rate. The eighteen percent interest rate specified in section nine does not apply to the judgment. Accordingly, the Court will award Jack Henry postjudgment interest at the statutory rate specified in § 1961.

There is one final issue with respect to pre- and postjudgment interest: When does prejudgment interest stop and postjudgment interest start. As a linguistic matter the answer is clear—when the Court entered the Judgment. But as a practical matter the answer is a little more complicated. There are multiple Judgments in this case. The Court has already entered two Judgments—the first on September 9, 2010, R. 224, and an amended Judgment on October 20, 2010, R. 244—and the Court will be entering a final amended Judgment contemporaneously with this Order. Which Judgment stops prejudgment interest and starts postjudgment interest? The answer is significant because the prejudgment interest rate is substantially higher than the postjudgment interest rate. The Sixth Circuit confronted this very question in *Scotts Co.*, 403

F.3d at 792-93. There were two judgments in *Scotts Co.*—a judgment entered shortly after the jury returned its verdict and a final judgment entered more than a year later following post-trial litigation. *Id.* at 787. The court reasoned that the vast disparity between the pre- and postjudgment interest rates would create an "equitable imbalance" if prejudgment interest ceased and postjudgment interest commenced on the date of the first judgment. *Id.* at 793. Therefore, to avoid an "unjustified benefit to the . . . losing party," the court held that the final judgment should be the dividing line between pre- and postjudgment interest. *Id.*

The basic rationale underlying *Scotts Co.* is that the Court should not unduly prejudice the prevailing party by setting the transition point between pre- and postjudgment interest too early. Applying this principle to this case, the Court will designate the amended Judgment entered on October 20, 2010, as the Judgment that stopped prejudgment interest and started postjudgment interest. That is because the delay between the first Judgment and the amended Judgment was of BSC's own doing. The Court stayed its first Judgment and entered an amended Judgment in response to BSC's own motion. R. 226. But the delay between the amended Judgment entered on October 20, 2010, and the final amended Judgment that will be entered contemporaneously with this Order is attributable to Jack Henry. The delay is the result of litigation over several of Jack Henry's own motions. *See* R. 233, 238. Jack Henry should not have to pay for delays caused by BSC, and BSC should not have to pay for delays caused by Jack Henry. Accordingly, the Court will order BSC to pay Jack Henry prejudgment interest at a rate of eighteen percent per annum from December 18, 2007, to October 20, 2010. Using the formula set forth in § 1961, the

Court will order BSC to pay Jack Henry postjudgment interest at a rate of 0.22%, compounded annually, from October 21, 2010, until the Judgment is paid in full.

II.     **Jack Henry's Motion for Attorney's Fees, R. 238.**

Jack Henry also filed a motion seeking to recover $411,646.04 in attorney's fees it incurred in defending against BSC's counterclaims. R. 238. Awarding attorney's fees to a prevailing party is an unusual step. "[T]he 'American Rule' has been and remains that parties to litigation must bear their own attorney's fees." *Smith v. Detroit Fed. of Teachers Local 231, Am. Fed. of Teachers, AFL-CIO*, 829 F.2d 1370, 1375 (6th Cir. 1987). Nevertheless, in certain limited circumstances, courts may order the losing party to pay the prevailing party's fees. Jack Henry urges the Court to utilize its inherent authority and its power under 28 U.S.C. § 1927 to "award fees when a party litigates 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). To award fees under this bad-faith exception, the Court must find that (1) "the claims advanced were meritless," (2) "counsel knew or should have known" that the claims were meritless, and (3) "the motive for filing the [claims] was for an improper purpose such as harassment." *Id.* (quoting *Smith*, 829 F.2d at 1375).

Awarding attorney's fees to Jack Henry is not warranted in this case. Only truly egregious conduct—the kind in which "the very temple of justice has been defiled," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (internal quotation omitted)—will justify a departure from the American Rule. BSC's counterclaims do not rise to that level. Although BSC ultimately

abandoned its counterclaims, the Court cannot say that they were frivolous. *See Hildebrand v. Steck Mfg. Co.,* 292 F. App'x 921, 924 (Fed. Cir. 2008) ("The fact that Steck ultimately decided not to pursue some of the counterclaims it originally asserted does not establish that those counterclaims were baseless or that Steck asserted them in bad faith."). Indeed, BSC's counterclaims survived Jack Henry's motion for summary judgment. *See* R. 112 at 19, 45. It is difficult to see how claims that survive summary judgment—that are supported by at least some admissible evidence—can nevertheless be so frivolous that their assertion constitutes bad faith. *See New England Surfaces v. E.I. DuPont de Nemours & Co.*, 558 F. Supp. 2d 116, 127 (D. Me. 2008). Because BSC's counterclaims were not frivolous or patently without merit, Jack Henry cannot establish that BSC knew or should have known that its counterclaims were meritless or that BSC made the claims for an improper purpose. Accordingly, awarding attorney's fees to Jack Henry is not justified.

The kind of egregious conduct that warrants an award of attorney's fees is that found in *FM Industries, Inc. v. Citicorp Credit Servs., Inc.*, 614 F.3d 335 (7th Cir. 2010). The plaintiffs in that case filed a frivolous copyright infringement lawsuit, demanded $15 billion in damages, and even requested $815 million in sanctions when the defendants missed one discovery deadline by one day. *Id.* at 338-39. The Seventh Circuit, in an opinion by Judge Easterbrook, readily affirmed the district court's award of attorney's fees to the defendant. *Id.* at 339-40. That is the kind of vexatious conduct that justifies a court using its inherent power to reverse the American Rule and award the prevailing party attorney's fees. BSC's counterclaims are not even in the same ballpark. Accordingly, the Court will deny's Jack Henry's motion for attorney's fees.

### III. Jack Henry's Motion to Include Postjudgment Interest in the Amended Judgment and Supersedeas Bond, R. 248.

Lastly, Jack Henry filed a motion to include postjudgment interest in the amended Judgment and supersedeas bond. R. 248. Jack Henry argues that the Court should require BSC's supersedeas bond to cover one year of postjudgment interest. R. 248, Attach. 1 at 3-4. Because the "purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal," *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-91 (5th Cir. 1979), BSC's supersedeas bond should include a reasonable estimate of the postjudgment interest that will accrue during the pendency of the appeal. Of course, it is impossible to know how long BSC's appeal will take. Other courts have used the average amount of time that it takes to decide an appeal in the circuit for guidance. *See, e.g.*, *Church & Dwight Co. v. Abbott Labs*, No. 05-2142, 2009 WL 2230941, at *17 (D.N.J. July 23, 2009). This is a reasonable method. As Jack Henry reports, the median amount of time between filing a notice of appeal and disposition in the Sixth Circuit was 14.7 months in 2009. R. 248, Attach. 1 at 3 (citing U.S. Court of Appeals - Judicial Caseload Profile, *available at* http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsa2009.pl.). Based on this data, Jack Henry argues that one year is a reasonable estimate of the amount of time that it will take the Sixth Circuit to render a decision on BSC's appeal. Jack Henry's estimate is a reasonable one. Therefore, the Court will require BSC to include one year's worth of postjudgment interest, calculated at a rate of 0.22%, in its supersedeas bond. This postjudgment interest rate will apply to both the damages and the prejudgment interest. *See Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002).

## IV. Amount of Supersedeas Bond

Jack Henry previously posted a supersedeas bond in the amount of $1,562,764.89. R. 245. The Court refused to approve that bond because it was facially deficient—it only covered the damages that had been awarded to Jack Henry but did not cover prejudgment interest. R. 246 (citing *United States ex rel. Lefan v. Gen. Elec. Co.*, Nos. 08-05216, 08-5296, 08-5510, 2010 WL 3476673, at *6-7 (6th Cir. Sept. 3, 2010)). The Court promised in that same Order that, after it resolved Jack Henry's pending motions for attorney's fees and postjudgment interest, it would indicate the amount of the supersedeas bond that BSC must post for the Court to approve the bond and stay its Judgment pending appeal under Rule 62(d) of the Federal Rules of Civil Procedure. *Id.* BSC must post a supersedeas bond in the amount of $2,366,382.50. This is how the Court arrives at that figure:

Damages awarded to Jack Henry = $1,562,764.89

Prejudgment interest at a rate of eighteen percent per annum from December 19, 2007 to October 20, 2010 = $798,423.00

    Dec. 19 - Dec. 31, 2007:    13/365 x 0.18 x $1,562,764.89 = $10,018.82

    Jan. 1 - Dec. 31, 2008:    0.18 x $1,562,764.89 = $281,297.68

    Jan. 1 - Dec. 31, 2009:    0.18 x $1,562,764.89 = $281,297.68

    Jan. 1 - Oct. 20, 2010:    293/365 x 0.18 x $1,562,764.89 = $225,808.82

    Total = $798, 423.00

Postjudgment interest at a rate of 0.22% for one year on the damages and the prejudgment interest = $5,194.61

Total = Damages ($1,562,764.89) + Prejudgment interest ($798,423.00) + Postjudgment interest ($5,194.61) = $2,366,382.50

Now that the Court has resolved Jack Henry's pending motions and advised BSC of the required amount of the supersedeas bond, the stay that the Court placed on its Judgment in the Order entered on October 21, 2010, R. 246, will be vacated ten days after the entry of this Order.

## CONCLUSION

For these reasons, it is **ORDERED** as follows:

(1) Jack Henry's motion to amend the Judgment to include postjudgment interest, R. 233, is **GRANTED IN PART** and **DENIED IN PART**. BSC shall pay Jack Henry postjudgment interest at a rate of 0.22%, compounded annually, from October 21, 2010, until the Judgment is paid in full. *See* 28 U.S.C. § 1961.

(2) Jack Henry's motion for attorney's fees, R. 238, is **DENIED**.

(3) Jack Henry's motion to include postjudgment interest in the amended Judgment and the supersedeas bond, R. 248, is **GRANTED IN PART** and **DENIED IN PART**.

(4) A final amended Judgment will be entered contemporaneously with this Order.

(5) If BSC wishes to stay the Court's Judgment pending appeal under Rule 62(d) of the Federal Rules of Civil Procedure, it must post a supersedeas

bond in the amount of **$2,366,382.50**. The Court will not approve a bond in a lesser amount.

(6) The stay on the Court's Judgment, R. 246, will be **VACATED** on November 22, 2010. The Clerk shall automatically vacate the stay on that date.

This the 10th day of November, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge